**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | |
|---|---|
| FRANK J. FOSBRE, JR., derivatively on behalf of INTERNATIONAL GAME TECHNOLOGY,<br><br>    Plaintiff,<br><br>vs.<br><br>THOMAS J. MATTHEWS, et al.,<br><br>    Defendants,<br><br>and<br><br>INTERNATIONAL GAME TECHNOLOGY,<br><br>    Nominal Defendant. | 3:09-CV-0467-ECR-RAM (Base Case)<br>Member Cases: 3:09-CV-0489, 3:09-CV-0536, and 3:09-CV-0542<br><br>**ORDER** |
| JEANNE M. CALAMORE, derivatively on behalf of INTERNATIONAL GAME TECHNOLOGY,<br><br>    Plaintiff,<br><br>vs.<br><br>THOMAS J. MATTHEWS, et al.,<br><br>    Defendants,<br><br>and<br><br>INTERNATIONAL GAME TECHNOLOGY,<br><br>    Nominal Defendant. | 3:09-CV-0489-ECR-VPC |
| SANJAY ISRANI, derivatively on behalf of INTERNATIONAL GAME TECHNOLOGY,<br><br>    Plaintiff, | 3:09-CV-0536-ECR-RAM |

```
vs.                                    )
                                       )
ROBERT A. BITTMAN, et al.,             )
                                       )
     Defendants,                       )
                                       )
and                                    )
                                       )
INTERNATIONAL GAME TECHNOLOGY,         )
                                       )
     Nominal Defendant.                )
_____)
IRINA ARONSON, derivatively            )   3:09-CV-0542-ECR-VPC
on behalf of INTERNATIONAL GAME        )
TECHNOLOGY,                            )
                                       )
     Plaintiff,                        )
                                       )
vs.                                    )
                                       )
THOMAS J. MATTHEWS, et al.,            )
                                       )
     Defendants,                       )
                                       )
and                                    )
                                       )
INTERNATIONAL GAME TECHNOLOGY,         )
                                       )
     Nominal Defendant.                )
_____)
```

This diversity case consists of four consolidated derivative actions brought by shareholders of Nominal Defendant International Game Technology ("IGT").[1]  Now pending are two motions to dismiss

---

[1] A note regarding the caption of this action.  The parties, pursuant to the stipulation approved by Judge Jones consolidating the actions (#37), have been using "In re International Game Technology Derivative Litigation" as the name of this case.  This is not our usual practice, which uses the original captions of the separate actions as the caption of the consolidated action, and uses the terminology "base case" and "member cases" to refer to them.  Though this is a matter of style, rather than substance, we prefer to follow our usual practice.  The parties should adopt our practice in future filings, to avoid any confusion that might otherwise arise.

(## 54, 56), the first filed by IGT, the other by the officers and directors of IGT named as Defendants ("Individual Defendants").[2]

The motions are ripe, and we now rule on them.

## I. Factual and Procedural Background

IGT is a Nevada corporation that specializes in the design, manufacture and marketing of computerized gaming equipment. Plaintiffs are individual shareholders of IGT. This case consists of four initially separate, but substantially similar actions, which the Court consolidated on October 26, 2009. On December 11, 2009, Plaintiffs filed the operative "Verified Consolidated Shareholder Derivative Complaint" ("Complaint") (#46). The Complaint asserts nine "counts," which describe various ways that IGT officers and directors allegedly breached their fiduciary duties and were unjustly enriched during the period from November 2007 to the present.[3] At the heart of Plaintiffs' Complaint is the allegation

---

[2] The Individual Defendants include Robert A. Bittman, Richard R. Burt, Patrick W. Cavanaugh, Anthony Ciorciari, Patti S. Hart, Robert A. Mathewson, Thomas J. Matthews, Robert Miller, Stephen Morro, Richard Pennington, Frederick B. Rentschler, David E. Roberson, Philip G. Satre, and Daniel R. Siciliano. David Johnson was named as a defendant in one of the member cases, Case No. 3:09-CV-542, but is not named in the text of the operative Complaint (#46). As such, it appears that any claims previously asserted against David Johnson have been withdrawn. (See Compl. ¶¶ 33-50 (#46) (listing defendants, not including David Johnson); P.s' Opp. at 1 n. 3 (#72) (same).)

[3] The nine "counts" include the following: (1) "Against All Defendants for Breach of Fiduciary Duty for Disseminating False and Misleading Information"; (2) "Against All Defendants for Breach of Fiduciary Duties For Failing to Maintain Internal Controls"; (3) Against All Defendants for Breach of Fiduciary Duties for Failing to Properly Oversee and Manage the Company"; (4) "Against All Defendants for Unjust Enrichment"; (5) "Against All Defendants for Abuse of Control"; (6) "Against All Defendants for Gross Mismanagement"; (7) "Against All Defendants for Waste of Corporate Assets"; (8) Against

3

that certain IGT senior officers made intentionally misleading public statements about the bright financial prospects of IGT, and that at least some of them benefitted from selling their own stock in IGT at inflated prices.  In fact, Plaintiffs allege, the officers were mismanaging the company, so that the prospects for the future were not bright at all.  The IGT Board of Directors, meanwhile, allegedly failed to oversee adequately the work of the officers and the performance of the company, failed to take action to terminate the officers for cause, and even rewarded one of them in particular, the former CEO, with a revised employment contract providing a large salary and bonus.

The motion to dismiss (#54), filed by IGT, asserts that the Complaint should be dismissed because Plaintiffs failed to make a pre-suit demand on IGT's board of directors and Plaintiffs have not alleged sufficient particularized facts to support application of the doctrine of demand futility.  Plaintiffs have opposed (#72) the motion (#54), and IGT has replied (#76).

The second pending motion to dismiss (#56) is filed by the Individual Defendants, who argue that each of the "counts" asserted against them fail to state a claim upon which relief can be granted. Plaintiffs have opposed (#71) the motion (#56), and the Individual Defendants have replied (#78).

---

Defendants Bittman, Burt, Hart, Mathewson, Miller, Rentschler, Roberson, and Satre for Breach of Fiduciary Duties of Loyalty and Good Faith in Connection with Matthew's 'Resignation'"; and (9) "Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information."  Of these nine "counts," all except for count 4, for unjust enrichment, are variants on the breach of fiduciary duty theme.

4

## II. Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (clarifying that Twombly applies to pleadings in "all civil actions").  On a motion to dismiss, except where a heightened pleading standard applies, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

5

1     Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
2 normally limited to the complaint itself.  See Lee v. City of L.A.,
3 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
4 materials outside the pleadings in making its ruling, it must treat
5 the motion to dismiss as one for summary judgment and give the non-
6 moving party an opportunity to respond.  FED. R. CIV. P. 12(d);
7 see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A
8 court may, however, consider certain materials — documents attached
9 to the complaint, documents incorporated by reference in the
10 complaint, or matters of judicial notice — without converting the
11 motion to dismiss into a motion for summary judgment."  Ritchie, 342
12 F.3d at 908.
13     If documents are physically attached to the complaint, then a
14 court may consider them if their "authenticity is not contested" and
15 "the plaintiff's complaint necessarily relies on them."  Lee, 250
16 F.3d at 688 (citation, internal quotations, and ellipsis omitted).
17 A court may also treat certain documents as incorporated by
18 reference into the plaintiff's complaint if the complaint "refers
19 extensively to the document or the document forms the basis of the
20 plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if
21 adjudicative facts or matters of public record meet the requirements
22 of Fed. R. Evid. 201, a court may judicially notice them in deciding
23 a motion to dismiss.  Id. at 909; see FED. R. EVID. 201(b) ("A
24 judicially noticed fact must be one not subject to reasonable
25 dispute in that it is either (1) generally known within the
26 territorial jurisdiction of the trial court or (2) capable of
27
28
                                    6

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. IGT's Motion to Dismiss (#54)

IGT argues that Plaintiffs' Complaint (#46) must be dismissed because Plaintiffs failed to adequately plead demand futility pursuant to Federal Rule of Civil Procedure 23.1 and Nevada law. Under Rule 23.1, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such a demand would have been futile. FED. R. CIV. P. 23.1(b)(3). All of Plaintiffs' claims in this lawsuit are derivative, requiring a demand on IGT's board or a particularized showing of demand futility. It is undisputed that Plaintiffs made no demand on IGT's board, so we need only consider whether Plaintiffs adequately pleaded demand futility.

Rule 23.1 does not establish the circumstances under which demand would be futile; rather, the law of IGT's incorporating state, Nevada, sets that standard. In re Silicon Graphics, Inc. Secs. Litig., 183 F.3d 970, 989-90 (9th Cir. 1999), abrogated on other grounds as recognized in S. Ferry LP, # 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008). Relatively recently, the Nevada Supreme Court clarified Nevada law regarding demand futility, adopting the approach developed by the Delaware Supreme Court. See Shoen v. SAC Holding Corp., 137 P.3d 1171, 1184 (Nev. 2006) (following Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244,

7

254 (Del. 2000), and Rales v. Blasband, 634 A.2d 927, 933 (Del. 1993)).  The test adopted in Shoen requires us to "examine whether particularized facts demonstrate: (1) in those cases in which the directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand."  Shoen, 137 P.3d at 1184.  In practice, the two prongs of this test "often amount to the same analysis, i.e., whether directorial interest in the challenged act or the outcome of any related litigation negates impartiality to consider a demand."  Id. at 1184 n.62.

    Demand futility analysis is normally conducted on a claim-by claim basis.  See In re Countrywide Fin. Corp. Deriv. Litig., 554 F. Supp. 2d 1044, 1080 (C.D. Cal. 2008) (citing Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 833 A.2d 961, 977 (Del. Ch. 2003)).  Here, however, the parties have not so organized their arguments, perhaps because the factual allegations and claims asserted by Plaintiffs in the Complaint (#46) overlap with one another to a significant extent.  We will proceed with our discussion of the issues as the parties have framed them — albeit not in the same order — while mindful of the requirement that demand be excused for each claim individually.  The IGT Board consisted, as

8

of the time this lawsuit was filed, of nine directors.[4] Thus, to establish demand futility, Plaintiffs must plead facts raising a reasonable doubt regarding the capability of at least five of those directors to consider impartially a demand with regard to each claim. See Shoen, 137 P.3d at 1184 n.62.

**A. Approval of Mr. Matthews' Revised Employment Agreement**

Plaintiffs assert in the Complaint (#46) that demand was not required on the IGT board because of the Board's actions relating to Mr. Matthews' employment. In March 2009, Mr. Matthews resigned as IGT's CEO, but retained his position as Chairman of the IGT's Board. (Compl. ¶¶ 16 n.3, 135 (#46).) IGT and Mr. Matthews subsequently entered into a revised employment agreement, pursuant to which Mr. Matthews continued to receive his previous base salary of $840,000 through December 1, 2009, and was eligible for an annual bonus. (Id. ¶¶ 16 n.3, 135.) Effective December 1, 2009, Mr. Matthews also resigned as Chairman of the Board, and was replaced by Mr. Satre. (Id. ¶ 18.) Plaintiffs argue that the members of the IGT Board who accepted Mr. Matthews resignation as CEO, rather than terminating him for cause, and who approved the renegotiated employment agreement breached their fiduciary duties by wasting corporate assets, "essentially bestowing a gift on [Mr. Matthews]." (Id. ¶ 135.)

Here, the contested corporate transaction is the result of director action, namely, the Board's acceptance of Mr. Matthews'

---

[4] The members of the IGT Board at the time this lawsuit was filed, and who therefore would have been charged with considering a demand by Plaintiffs, had it been made, were defendants Bittman, Burt, Hart, Mathewson, Matthews, Miller, Rentschler, Roberson, and Satre.

9

1  resignation as CEO and approval of his revised employment agreement.
2  Thus, in order to establish demand futility, Plaintiffs "must plead,
3  with sufficient particularity, that a reasonable doubt exists that
4  the directors are independent and disinterested or entitled to the
5  protections of the business judgment rule."  Shoen, 137 P.3d at
6  1187.  They have not done so.  Plaintiffs do not argue that any of
7  the directors were not independent and disinterested with regard to
8  these decisions.  Plaintiffs allege generally that the Board's
9  decisions relating to Mr. Matthews' employment were not protected
10 business judgments.  (See Compl. ¶ 135 (#46).)  Nevertheless, they
11 allege no particularized facts and present no argument in support of
12 that bald assertion.  See White v. Panic, 783 A.2d 543, 549 (Del.
13 2001) (stating that at the motion to dismiss stage, plaintiffs in a
14 derivative suit "are entitled to all reasonable factual inferences
15 that logically flow from the particularized facts alleged, but
16 conclusory allegations are not considered as expressly pleaded facts
17 or factual inferences").
18      From the particularized facts pleaded, it appears that Mr.
19 Matthews was not given a "gift," but rather he was paid for his
20 continued service as Chairman of the Board.  A board's decisions
21 relating to executive compensation are "the essence of business
22 judgment . . . ."  Brehm, 746 A.2d at 263.  Plaintiffs have pleaded
23 no particularized facts that raise a reasonable doubt that the
24 Board's challenged decisions relating to Mr. Matthews fall within
25 the Board's broad discretion in such matters.  Cf. In re. Walt
26 Disney Co. Deriv. Litig., 825 A.2d 275, 289 (Del. Ch. 2003)
27 (excusing demand because particularized facts pleaded, if taken as
28

10

true, demonstrated defendant directors consciously and intentionally disregarded their responsibilities relating to employment of corporate officer). As such, Plaintiffs' allegations relating to Mr. Matthews' resignation as CEO and revised employment agreement do not establish demand futility with regard to any of Plaintiffs' claims.

**B. Director Compensation**

Plaintiffs argue that Defendants Burt, Mathewson, Miller, and Rentschler receive such high compensation for their service as IGT directors that their ability to impartially consider a demand relating to Plaintiffs' claims is compromised. Plaintiffs allege that in fiscal year 2008 Mr. Burt received $404,998 for his services as director, Mr. Mathewson received $384,498, Mr. Miller received $413,498, and Mr. Rentschler received $419,498.[5] (Compl. ¶ 133(c)-(f) (#46).) Plaintiffs assert that these amounts equal or exceed the salaries of many senior IGT officers, and equal or exceed the compensation received by the directors of many much larger U.S. companies. The conclusion Plaintiffs suggest should be drawn is that such high directors' fees "clearly give a reasonable IGT stockholder reason to doubt that they could independently consider a demand." (P.s' Opp. at 16 (#72).)

Plaintiffs' conclusion, however, does not follow from their premises. As Plaintiffs concede, allegations "that directors are

---

[5] We acknowledge that IGT questions whether fiscal year 2008 was the relevant year, given that the lawsuits that were consolidated here were all filed in 2009. Director compensation in 2009 was apparently lower, because of the decline in value of stock-based compensation. (See IGT's Reply at 5 (#76).) Our analysis here does not change, however, no matter which fiscal year's compensation figures are used.

11

paid for their services as directors . . . without more, do not establish" a disabling interest or lack of independence on the part of the director. <u>Grobow v. Perot</u>, 539 A.2d 180, 188 (Del. 1988), <u>overruled in part on other grounds by</u> <u>Brehm</u>, 746 A.2d 244 (Del. 2000). Several courts have suggested in dictum that if the directors' fees are shown to "exceed materially what is commonly understood and accepted to be a usual and customary director's fee," this might constitute the necessary something "more." <u>E.g.</u> <u>Orman v. Cullman</u>, 794 A.2d 5, 29 n.62 (Del. Ch. 2002). Nevertheless, Plaintiffs have not cited, and we have not discovered, any case in which a court has found a director's fee to be something other than "usual and customary" based solely on the size of the fee. <u>C.f.</u> <u>In re Countrywide Fin. Corp. Deriv. Litig.</u>, 554 F. Supp. 2d 1044, 1078 (C.D. Cal. 2008) (applying Delaware law, finding director compensation ranging from $358,966 to $538,824 to be "substantial," but not so "astronomical" as to support, without more, a finding of demand futility).

  Rather, in cases where demand is excused, there is always some circumstance in addition to the size of the fee that casts doubt on the directors' independence. For example, in <u>In re National Auto Credit, Inc. Shareholders Litigation</u>, No. 19028, 2003 WL 139768 (Del. Ch. Jan. 10, 2003), an unpublished opinion cited by Plaintiffs, there were allegations of "massive increases" in director's fees, from which a "causal link" between the directors' compensation and the challenged resolutions adopted by the Board could be reasonably inferred. <u>Id.</u> at *11. Here, Plaintiffs have made no such allegations of a quid pro quo, or indeed any causal

12

link, between the challenged actions and omissions of the IGT Board and the directors' compensation. Demand also would also be excused if the IGT directors would jeopardize their positions on the Board, and hence the continued receipt of their substantial director's fees, if they were to accede to a shareholder demand. Cf. Mizel v. Connelly, No. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999) (CEO whose actions were challenged in the lawsuit was also the company's largest shareholder, the management superior of two director-officers and the grandfather of one of them, and owner of a 100% interest in the company that was the primary employer of an outside director) (cited in P.s' Opp. at 11 (#72)). Nothing in the particularized allegations of the Complaint (#46), however, supports this theory of demand futility, either. Thus, Plaintiffs' have not raised a reasonable doubt that any of the IGT directors would have been incapable of impartially considering a demand relating to any of Plaintiffs' claims.

**C. Committee Membership**

Plaintiffs argue that a number of the IGT directors are interested in the outcome of this litigation, and thus incapable of impartially considering a demand, because of their membership on various committees of the IGT Board. Specifically, Plaintiffs cite the participation of defendants Burt, Hart, Mathewson, Rentschler and Roberson on the Audit Committee, and defendants Burt, Miller, Rentschler and Satre on the Nominating and Corporate Governance Committee ("Governance Committee"). (Compl. ¶¶ 134(d),(e) (#46).) Plaintiffs argue that each of these directors face a substantial likelihood of liability for breaches of their fiduciary duties

13

relating to their work on these committees.  The members of the Audit Committee allegedly "caused the Company to issue repeated false and misleading statements" and "failed to ensure the existence of adequate internal controls at IGT over insider stock sales." (P.s' Opp. at 26.)  The members of the Governance Committee allegedly failed in "reviewing compliance by senior officers and directors with IGT's Code of Business Conduct . . . and implementing remedial measures."  (Id. at 27.)

Demand futility with respect to a given director is not necessarily established just because the director is named as a defendant in the derivative suit.  Rather, to establish demand futility based on an interest in the outcome of the suit, a plaintiff must allege particularized facts showing that "a substantial likelihood of director liability exists."  Shoen, 137 P.3d at 1184 (quoting Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995)).  Under Nevada law, this is a "difficult threshold to meet."  Id.  Nevada law statutorily exculpates directors and officers from personal liability for breach of fiduciary duty unless the act or failure to act constituting the breach "involved intentional misconduct, fraud or a knowing violation of the law," with exceptions not applicable here.  NEV. REV. STAT. § 78.138(7). Thus, to demonstrate demand futility through a showing of a substantial likelihood of director liability, Plaintiffs must plead particularized facts showing that the acts or omissions of the defendant directors involved intentional misconduct, fraud or a

14

knowing violation of the law.[6]  In other words, Plaintiffs are required to plead particularized facts supporting the notion that "the directors were conscious of the fact that they were not doing their jobs." In re Coca-Cola Enters., Inc. Deriv. Litig., 478 F. Supp. 2d 1369, 1377 (N.D. Ga. 2007) (applying Delaware law).

Plaintiffs have failed to plead particularized facts showing the members of the Audit Committee or the Governance Committee acted or failed to act with requisite level of scienter.  The Complaint (#46) does not, for the most part, include any particularized facts demonstrating director involvement in the alleged breaches of fiduciary duty falling under the respective committees' area of responsibility.[7]  It also lacks any particularized facts as to what information the respective committees saw and upon which they failed to act.  See In re Coca-Cola, 478 F. Supp. 2d at 1378-79 (applying Delaware law, finding allegations to be insufficient to excuse demand on defendant Audit Committee members because plaintiff "failed to point to any specific facts indicating the existence of 'red flags' which would have suggested to the members of the

---

[6] Plaintiffs' argument that they "cannot be dismissed at the pleading stage" based on such an exculpatory provision in IGT's bylaws misses the mark. (P.s' Opp. at 28 (#72).)  It is not IGT's bylaws, but rather a Nevada statute, that contains the exculpatory provision at issue.  Moreover, Nevada case law demonstrates that the statutory exculpatory provision can and should be considered at the pleading stage.  See Shoen, 137 P.3d at 1184 and n.60 (describing Nev. Rev. Stat. § 78.138(7) as part of demand futility analysis properly applied to a motion to dismiss).

[7] The one possible exception here is the allegation that Mr. Burt directly participated in the alleged insider trading of IGT stock, as well as serving as a member of the Governance Committee.  There are no particularized facts pleaded showing director involvement, however, with respect to the other committee members.

15

committee that there were problems . . . or of any conscious decision not to take action despite any such red flags") (internal quotation marks omitted). The Complaint's general allegations that committee members "permitted" various breaches of fiduciary duties are insufficient to show intentional misconduct, fraud or a knowing violation of the law by those directors. (See Compl. ¶ 134(d),(e).) As such, Plaintiffs have failed to demonstrate demand futility with regard to any of their claims based on IGT directors' committee membership.

### D. Directors' Principal Employment With IGT

Plaintiffs argue that two of the IGT directors were incapable of considering a demand because their "principal professional occupations were their respective positions with IGT" when this lawsuit was initiated. (P.s' Opp. at 14 (#72).) Specifically, Ms. Hart was IGT's CEO and President, having taken over from Mr. Matthews after his resignation in April 2009, and Mr. Matthews was employed as the Chairman of the IGT Board of Directors. Plaintiffs' assert that Ms. Hart's and Mr. Matthews' substantial financial interest in maintaining their respective positions gives rise to a reasonable doubt that they are able to impartially consider a demand, "independent of directors who are their employers and/or management superiors." (Id. at 12.) Plaintiffs' theory here is apparently that the Compensation Committee of the Board of Directors constitutes an employer, for purposes of this analysis; as of the time of lawsuit, Ms. Hart, as CEO of IGT, had no management superiors, and Mr. Matthews, as Chairman of the Board, held no position in the IGT management at all.

16

Demonstrating that a director is principally employed by a corporation, however, is not enough to establish that director is incapable of impartially considering a demand on that corporation. See In re NutriSystem, Inc. Deriv. Litig., 666 F. Supp. 2d 501, 515 (E.D. Pa. 2009) ("Under Delaware law, merely being employed by a corporation is not, by itself, sufficient to create a reasonable doubt as to the independence of a director.") (citing In re Walt Disney Co. Deriv. Litig., 731 A.2d 342, 356 (Del. Ch. 1998), aff'd in pertinent part, 746 A.2d 244 (Del. 2000)); In re Sagent Tech., Inc., Deriv. Litig., 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (noting that if allegations that directors acted or would act to preserve their positions were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand).  Further, the existence of a compensation committee, "absent more particularized factual allegations of undue influence, is not enough by itself" to create a reasonable doubt about a director's independence.  In re NutriSystem, 666 F. Supp. at 515-16.  Here, Plaintiff has made no particularized allegations of any undue influence the compensation committee might have over Ms. Hart or Mr. Matthews.

Furthermore, even if Ms. Hart and Mr. Matthews were in some way beholden to the members of the compensation committee, that would not be sufficient to establish an inability to impartially consider a demand.  As discussed above, Plaintiffs have failed to plead particularized facts sufficient to raise a reasonable doubt that the members of the compensation committee are disinterested and impartial with respect to Plaintiffs' claims.  Where a dominating

17

director is disinterested and impartial with respect to the demand, the relationship between the beholden director and the dominating director is not pertinent to the demand futility analysis. See In re Dow Chem. Co. Deriv. Litig., no. 4349, 2010 WL 66769, at *8 (Del. Ch. 2010) ("Plainly put, the beholdenness or dominance of any director is irrelevant because there is no fear that the dominating director, without a personal or adverse interest, will do anything contrary to the best interest of the company and its stockholders.") Plaintiffs have therefore failed to demonstrate demand futility for any of their claims with respect to Ms. Hart or Mr. Matthews on the basis of their respective principal professional occupations.

**E. Insider Trading**

Plaintiffs allege that defendants Burt, Bittman and Matthews engaged in insider trading of IGT stock, and that therefore a demand on them would have been futile. Nevertheless, we need not now address whether the allegations in the Complaint (#46) are sufficiently particularized to excuse demand for some or all of Plaintiffs' claims. As noted above, to establish demand futility, Plaintiffs must show that a majority of the IGT Board — that is, at least five directors — would have unable to consider impartially a demand with regard to each claim. Even assuming demand to be excused with respect to these three defendants, Plaintiffs have not cleared that bar.

In short, Plaintiffs have failed to demonstrate demand futility with respect to any of their claims. As such, IGT's motion (#54) to dismiss the Complaint (#46) for failure to comply with the pleading

requirements of Rule 23.1(b) and Nevada law will be granted.

### IV. Individual Defendants' Motion to Dismiss (#56)

In light of our conclusion that IGT's motion to dismiss (#54) should be granted, the Individual Defendants' motion to dismiss (#56) is moot. We therefore will deny the motion on that basis, and need not address the merits of the arguments therein.

### V. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires." FED. R. CIV. P. 15(a). In general, amendment should be allowed with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003)(discussing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Although Plaintiffs have failed to plead with particularity facts that would establish demand futility, there is nothing in our record that requires the conclusion that it would be impossible for them to do so. As such, it would not be futile to permit Plaintiffs to file an amended complaint. Nor do any of the other factors that might weigh in favor of denying leave to amend apply here. Thus, we will grant Plaintiffs leave to amend their complaint. If, however,

1 the newly amended complaint is similarly deficient, we may be forced
2 to conclude that further leave to amend would be futile.

## VI. Conclusion

Plaintiffs failed to make any demand on the IGT Board and have not pleaded particularized facts sufficient to demonstrate demand futility with respect to their claims.  As such, the Complaint (#46) must be dismissed.  Nevertheless, Plaintiffs should be afforded an opportunity to file an amended complaint.

**IT IS, THEREFORE, HEREBY ORDERED** that IGT's motion to dismiss (#54) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Individual Defendants' motion to dismiss (#56) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty one (21) days within which to file an amended complaint.

DATED: July 2, 2010.

_Edward C. Reed_
UNITED STATES DISTRICT JUDGE

20